UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DEBBIE JAMES                           CIVIL ACTION NO. 6:16-cv-0055

VERSUS                                 JUDGE UNASSIGNED

U.S. COMMISSIONER,                     MAGISTRATE JUDGE WHITEHURST
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED.

## I. ADMINISTRATIVE PROCEEDINGS

The claimant, Debbie James, fully exhausted her administrative remedies prior

to filing this action in federal court.  The claimant filed an application for

supplemental security income benefits ("SSI"), alleging disability beginning on

December 1, 1992.[1]  Her application was denied on June 20, 2011.[2]  The claimant

requested a hearing, which was held on February 28, 2012 before Administrative Law

---

[1]      Rec. Doc. 7-1 at 218-226.

[2]      Rec. Doc. 7-1 at 102-112.

Judge Michael Hertzig.[3]  The ALJ issued a decision on May 22, 2012,[4] concluding that although the claimant "is under a disability," a substance abuse disorder was a contributing factor material to the determination of disability and therefore, the claimant is not considered "disabled" under the Social Security Act at any time from the date her application was filed through the date of the ALJ's decision.

The claimant asked for review of the decision, and the Appeals Council reversed the decision of ALJ Hertzig on May 15, 2013 on grounds the ALJ omitted identifying a specific job that the claimant could perform.[5]  A review of the hearing transcript shows that the vocational expert testified the claimant could perform all of her past relevant work based on the hypothetical situation presented by the ALJ, yet the work history provided by the claimant was not useful in determining whether the claimant earned substantial wages at any position for any month during her employment.  The Appeals Council determined that remand was necessary to evaluate the claimant's work history.

---

[3]    The hearing transcript is found at Rec. Doc. 7-1 at 31-62.

[4]    Rec. Doc. 7-1 at 113-126.

[5]    Rec. Doc. 7-1 at 130-32.

The case was heard on remand by a second ALJ, Nancy M. Pizzo, on November 18, 2013.[6] An unfavorable decision was rendered on June 25, 2014, at which time the ALJ determined the claimant has the RFC to perform light work, with the following restrictions: the claimant requires simple directions, instructions, and work-related decisions; routine workplace changes; an environment free of fast-paced production requirements; is able to concentrate for 2 hours at a time; must avoid work with dangerous and hazardous machinery, balancing, and at heights; lifting/carrying is limited to 10 lbs. with the right dominant upper extremity, and is limited to occasional overhead reaching with the right dominant upper extremity.[7] After a timely request for review was directed to the Appeals Council, an unfavorable decision was rendered on November 9, 2015.[8] Therefore, ALJ Pizzo's June 25, 2014 decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. §405(g). The claimant then filed this action seeking review of the Commissioner's decision.

---

[6]     The hearing transcript is found at Rec. Doc. 7-1 at 63-101.

[7]     Rec. Doc. 7-1 at 8-30.

[8]     Rec. Doc. 7-1 at 1-4.

## II. SUMMARY OF PERTINENT FACTS

The claimant was born on August 29, 1964.[9]  She has had a very limited work life.  From 1998 forward, the claimant cumulatively earned just over $,1000 in four of the years.  In eleven years, she has no reported earnings.  The claimant alleges that she has been disabled since December 1, 1992[10] due to bipolar disorder, manic depression, left knee problems, right ankle problems, anxiety, insomnia, blood problems, and difficulties with her breasts.[11]

## III. ANALYSIS

### A.   **Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  Substantial

---

[9]      Rec. Doc. 7-1 at 218.

[10]      Rec. Doc. 7-1 at 218.

[11]      Rec. Doc. 7-1 at 125.

[12]      *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13]      *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3)

---

[14]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[15]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[16]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[17]    *Martinez v. Chater*, 64 F.3d at 174.

the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

## B.    <u>Entitlement to Benefits</u>

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[19]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[20]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but

---

[18]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[19]    See 42 U.S.C. § 423(a).

[20]    42 U.S.C. § 1382(a)(1) & (2).

[21]    42 U.S.C. § 1382c(a)(3)(A).

cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

## C.    **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[23]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[24]

---

[22]    42 U.S.C. § 1382c(a)(3)(B).

[23]    20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[26] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[27]

The claimant bears the burden of proof on the first four steps.[28] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[25]    20 C.F.R. § 404.1520(a)(4).

[26]    20 C.F.R. § 404.1545(a)(1).

[27]    20 C.F.R. § 404.1520(e).

[28]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

rebut this finding.[31]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

## D.    The ALJ's Findings and Conclusions

Ms. James's claim has twice been adjudicated, by two different ALJs.  On appeal to this Court is ALJ Pizzo's June 25, 2014  decision that the claimant is not disabled.  The claimant challenges the ALJ's failure to make a proper Listing evaluation and her finding that she can perform "light" work.

Although the claimant's first claim appears to have been based on mental health limitations, at the second hearing, the claimant argued she had developed severe physical problems as a result of an accident.  She introduced MRI tests that revealed the existence of a herniated disc at the C5-6 level, as well as a full thickness tear in her right shoulder.  At the second hearing, the claimant testified she was in constant pain, had no use of her right hand, and couldn't hold a hair brush or lift a gallon of milk.  ALJ Pizzo found that the claimant had severe impairments of major depression, substance abuse disorder, and arthralgias (pain in joints), but that her mental health limitations did not meet Listings 12.04 or 12.09.  The ALJ also found

---

[31]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

that the claimants' physical limitations are not disabling, but the claimant argues the ALJ's failure to specifically evaluate whether her musculoskeletal impairments met a Listing was error.   The ALJ found that the claimant has no past relevant work, but that she has the residual functional capacity to perform the light work jobs of stock order filler, cashier, and office clerk[33] and therefore was not disabled from October 26, 2010 (the date of her application) through June 25, 2014 (the date of the decision) because there are jobs in the national economy that she can perform.[34]

**E.    The Allegations of Error**

Ms. James claims that the second ALJ erred as follows:

- in failing to make a proper "Listing" evaluation; and

- in finding that Ms. James had a "light" residual functional capacity.

Specifically, Ms. James argues ALJ Pizzo erred because she did not expressly evaluate her orthopedic impairments under the musculoskeletal Listings at 1.01 *et. seq.*, or explain which elements of these Listings were not satisfied.

*1.    Did the ALJ err in failing to specifically address Listings 1.01, et seq?*

Review of the record shows the ALJ did not specifically discuss Listing 1.02 or Listing 1.04A with respect to her Step Three finding.   The claimant argues the

---

[33]    Rec. Doc. 7-1 at 25.

[34]    Rec. Doc. 7-1 at 25.

-10-

foregoing is error under *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("The ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. "Such a bare conclusion is beyond meaningful judicial review.").  However, ALJ Pizzo did discuss the claimant's November 2012 cervical spine MRI and right shoulder MRI results and other objective medical evidence when analyzing the claimant's residual functional capacity.[35]  Thus, assuming the ALJ erred by not expressly discussing Listings 1.02 and 1.04A at step three, this Court still must consider whether such error was harmless.  *See Audler*, 501 F.3d at 448. To demonstrate the requisite harm, the claimant must demonstrate that the evidence showed that she satisfied Listings 1.02 and 1.04A.  *See id.* at 449.

Here, the claimant has not shown that she met or medically equaled Listing 1.02 and 1.04A's precise criteria.  Thus, any error in the ALJ's step three analysis is harmless, and remand is not necessary.  Listing 1.04A requires a showing of an impairment resulting in:

> nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

---

[35] Rec. Doc. 7-1 at 19-20, 22-24, 397-99.

sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A.

In the instant case, the ALJ relied upon the findings of Dr. Kenneth A. Ritter, Jr., who observed on February 28, 2014 that the claimant had normal range of motion in all joints, including her neck.[36]  He also observed that the claimant had normal strength, intact and normal deep tendon reflexes, normal sensation, and normal gait and station.[37] These normal findings indicate that the claimant did not have the requisite limited range of motion of the spine, motor loss, or sensory or reflex loss, and thus, she cannot satisfy Listing 1.04A. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A (requiring, in part, limitation in range of motion of the spine, motor loss, and sensory or reflex loss).

Additionally, the claimant has not shown that she satisfies the requirements of Listing 1.02.  Listing 1.02, based on a major dysfunction of a joint, is "characterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate

---

[36] Rec. Doc. 7-1 at 519.

[37] Rec. Doc. 7-1 at 519-20.

-12-

medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02. Listing 1.02A also requires "involvement of one major peripheral, weight bearing joint (*i.e.*, hip, knee, or ankle) resulting in an inability to ambulate effectively, as defined in 1.00B2b." *Id.* § 1.02A. "Inability to ambulate effectively" consists of "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(b).

Here, the claimant has not demonstrated that she could not ambulate effectively as the regulations define that term. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(b).  Dr. Ritter noted that the claimant had a normal gait and station,[38] and that although she had a positive bulge sign in her right knee, her range of motion was not affected.[39]  In his medical source statement completed the same day, Dr. Ritter stated that the claimant could stand and walk for 8 hours in an 8-hour workday, and that she did not require the use of a cane to ambulate.[40] These findings show that the

---

[38] Rec. Doc. 7-1 at 519-20.

[39] Rec. Doc. 7-1 at 520.

[40] Rec. Doc. 7-1 at 522-23.

claimant could ambulate effectively and did not satisfy Listing 1.02A with respect to either a knee or ankle impairment.

The claimant also has not demonstrated that she met or medically equaled Listing 1.02B with respect to her shoulder impairment.  Listing 1.02B requires major dysfunction as described above, along with "involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.02(B). "Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §1.00(B)(2)(c).

The undersigned agrees with the SSA that Listing 1.02B appears to contemplate dysfunction in both upper extremities, requiring "[i]nvolvement of one major peripheral joint in *each* upper extremity."  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.02(B) (emphasis added).  Here, the radiological results indicate a right

-14-

shoulder impairment only.[41]  Furthermore, the claimant has not demonstrated that she

could not effectively perform fine and gross movements as the regulations define that

term. *See* 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 1.00(B)(2)(c). On February 28,

2014, despite pain, Dr. Ritter observed full range of motion in the claimant's right

shoulder.[42] In his medical source statement dated the same day, Dr. Ritter opined that

the claimant could continuously reach, handle, finger, push, and pull with both upper

hands, and he determined that the claimant could lift 51 to 100 pounds occasionally

and 21 to 50 pounds frequently.[43]   *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1

§1.00(B)(2)(c) (explaining that an individual must be able to perform functions such

as "reaching, pushing, pulling, grasping, and fingering to be able to carry out

activities of daily living"). Dr. Ritter further indicated that Plaintiff could care for

personal hygiene, prepare a simple meal and feed herself, and sort, handle, and use

paper/files.[44] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §1.00(B)(2)(c) (including "the

inability to prepare a simple meal and feed oneself, the inability to take care of

personal hygiene, the inability to sort and handle papers or files" as examples of an

---

[41] Rec. Doc. 7-1 at 399.

[42] Rec. Doc. 7-1 at 519.

[43] Rec. Doc. 7-1 at 521, 523.

[44] Rec. Doc. 7-1 at 526.

inability to perform fine and gross movements effectively).  Considering the foregoing, the claimant has not shown that she could not effectively perform fine and gross movements and therefore cannot show that she met or medically equaled Listing 1.02B.

Accordingly, even if the undersigned were to assume the ALJ erred by not expressly discussing Listings 1.02 and 1.04A at Step Three, the undersigned concludes such error was harmless, as the claimant fails to  demonstrate that she satisfied Listings 1.02 and 1.04A.

2.    *Did the ALJ err in determining claimant had a "light" residual functional capacity?*

ALJ Pizzo determined that the claimant has the RFC to perform several light work jobs, a finding the claimant challenges.[45]  The RFC is the most an individual can do on a sustained basis after considering the effects of physical and/or mental limitations on the claimant's ability to perform work-related tasks.  *See* 20 C.F.R. §416.945(a). The ALJ has the final responsibility for determining an individual's RFC based on all of the relevant medical and other evidence.  *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 416.945-946.  The RFC assessment is an administrative finding of fact, and the ALJ, not a medical source, is responsible

---

[45] Rec. Doc. 7-1, at 15.

for this assessment. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); *see also Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012).

In making her RFC determination, ALJ Pizzo relied upon the February 28, 2014 consultative examination and medical source statement of Dr. Ritter.[46] On examination, Dr. Ritter observed that the claimant had a normal gait and station and normal range of motion in all of her joints; normal strength, sensation, and deep tendon reflexes; could frequently lift and carry up to 50 pounds and occasionally lift and carry up to 100 pounds; and could sit, stand, and walk for 8 hours each in an 8-hour workday.[47] Dr. Ritter also indicated the claimant could continuously reach, handle, finger, feel, push, pull, and operate foot controls; and could continuously crawl, crouch, kneel, stoop, balance, climb stairs, ramps, ladders, or scaffolds, and tolerate exposure to environmental conditions.[48]

Ms. James argues ALJ Pizzo erroneously found that she could perform light work because the ALJ limited the claimant to lifting no more than 10 pounds with her right dominant upper extremity. The claimant appears to be arguing that by restricting her lifting with her right hand to 10 pounds, the ALJ should have found the

---

[46] Rec. Doc. 7-1, at 15, 519-25.

[47] Rec. Doc. 7-1 at 519-22.

[48] Rec. Doc. 7-1 at 523-25.

claimant can only perform sedentary rather than light work.  The clamant's argument is without merit.  Although the full range of light work generally requires lifting 20 pounds occasionally, *see* 20 C.F.R. § 416.967(b), a job may also be classified as light work where the weight lifted is very little but the job "requires a good deal of walking or standing." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5.  Here, the evidence in the record shows that the ALJ limited the claimant to a reduced range of light work, not to sedentary work as the claimant argues.  In accordance with SSR 83-12, the ALJ then consulted a vocational expert to determine that an individual with the same RFC as claimant, including a limitation to lifting 10 pounds with her right dominant upper extremity, could perform other work.[49]  These findings are supported by the evidence in the record.

The claimant also appears to be arguing the ALJ did not properly consider her ability to maintain employment on a sustained basis.  The Fifth Circuit has held that an affirmative finding that an individual can maintain employment is necessary only when an individual's "ailment waxes and wanes in its manifestation of disabling symptoms."  *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).  Absent such a showing, the RFC assessment subsumes the determination that an individual can maintain employment.  *See Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).

---

[49] Rec. Doc. 7-1 at 15.

-18-

Here, ALJ Pizzo explicitly recognized that the RFC represented the claimant's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."[50]  The ALJ's reference to 20 C.F.R. §416.945 and SSR 96-8p further shows that she appreciated that her RFC assessment inherently encompassed a finding that the claimant could maintain employment (Tr. 13). *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).  Because the claimant has not pointed to any evidence showing that her impairments "wax and wane," the ALJ's RFC assessment encompassed claimant's ability to maintain employment.

In arguing that she cannot maintain employment, the claimant cites to her work history showing low or no earnings for several years and that she lived with her mother. In *Singletary v. Bowen*, the court noted that a finding that an individual cannot work for significant periods of time must be supported by medical evidence, not just the claimant's personal history.  798 F.2d 818, 822 (5th Cir. 1986) ("A determination that a claimant is unable to continue working for significant periods of time must, however, be supported by more than a claimant's personal history; it must also be supported by medical evidence.").  Thus, the mere fact that the claimant had a poor work history and lived with her mother does not show that she could not sustain employment.

---

[50] Rec. Doc. 7-1 at 13.

Considering the foregoing, the undersigned concludes the ALJ's determination that the claimant can perform light work is supported by the record.

## CONCLUSION AND RECOMMENDATION

Thus, for the reasons stated herein, **IT  IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 8th day of June,  2018.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**